FILED
OCT 2 4 2013
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR ) <br> AN ORDER PURSUANT TO ) <br> 18 U.S.C. § 2703(d) ) <br> ) <br> Internet Protocol Address: 67.222.153.54 ) <br> _____ ) | MISC. NO. 13-665 **DAR** |

## AMENDED APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this amended *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Government of Romania on Mutual Legal Assistance in Criminal Matters, U.S.-Rom., May 26, 1999, S. TREATY DOC. NO. 106-20 (2000), as amended by the Extradition Treaty Between the United States of America and Romania and the Protocol to the Treaty Between the United States of America and Romania on Mutual Legal Assistance in Criminal Matters, U.S.-Rom., September 10, 2007, S. TREATY DOC. NO. 110-11 (2008) (hereinafter, the "Treaty"), to execute a request from Romania made pursuant to the Treaty.[1] The proposed

---

[1] The United States filed its initial application on July 2, 2013. In its application, the United States requested (1) preclusion of notice pursuant to 18 U.S.C. § 2705(b), and (2) a two-year sealing order. On July 3, 2013, the Court issued an order directing the government to explain why it had requested preclusion of notice pursuant to 18 U.S.C. § 2705(b), rather than delayed notification pursuant to 18 U.S.C. § 2705(a), and why preclusion of notice and the sealing order would be appropriate for two years. The Court stayed its consideration of the government's application pending the government's response. Thereafter, on July 31, 2013, the court issued an order denying the government's application without prejudice because the government had not filed a response.

Before responding to the Court's order, the government contacted Romanian authorities to confirm that they still needed the records they had requested and that they wanted us to keep the request, the application, and any court order confidential. In early October, Romanian authorities confirmed that they still needed the records and

order would require KnownHost LLC, an Internet service provider located in West Chester, Pennsylvania, to disclose subscriber and transactional records pertaining to the Internet Protocol ("IP") address 67.222.153.54, as identified in Part I of Attachment A to this application and the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to this application and the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND

1. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d) (2012). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii) (2012); *see also* 18 U.S.C. § 3512(a)(2)(B) (2012) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) (2012) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

2. Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1) (2012). This application to execute Romania's request has been duly authorized by an appropriate official of the Department of Justice, through the Office of

---

recently informed us that they did not "require confidentiality." Accordingly, the government is no longer seeking delayed notification or a sealing order.

International Affairs,[2] which has authorized execution of the request and has delegated the undersigned to file this application.

3. KnownHost LLC is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require KnownHost LLC to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (2012) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (2012) (Part II.B of Attachment A).

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (2012). Accordingly, the next section of this application sets forth specific and articulable facts that establish that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5. Authorities in Romania are investigating a computer fraud, which occurred between on or about May 20, 2012, and July 24, 2012, in violation of the criminal law of Romania, specifically, Article 48, Title III of Law No. 161/2003 and Article 27(1) and (2) of Law No. 365/2002. A copy of these laws is appended to this application. The United States, through the Department of Justice, Criminal Division, Office of International Affairs, received a

---

[2] The Attorney General, through statutes and regulations, has delegated to the Office of International Affairs his authority to serve as the "Central Authority" or "Competent Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B (2013).

request from Romania to provide the requested records to assist in the criminal investigation. Romania made its request pursuant to the Treaty. Under the Treaty, the United States is obligated to render assistance in response to the request.

6. According to authorities in Romania, between on or about May 20, 2012, and July 8, 2012, Toia Florian received four e-mail messages asking him to provide personal and credit card details to reactivate his account with a company that provides online payment services known as Skrill Holdings Ltd. ("Skrill") (formerly, Moneybookers Ltd.). Mr. Florian accessed a link in one of the four e-mail messages and was directed to a website, which appeared to be Skrill's website, and provided personal details, a credit card number, and the credit card verification value (cvv) number. Shortly thereafter, between on or about July 17, 2012, and July 24, 2012, an unidentified person engaged in 26 fraudulent credit card transactions and charged 4294.44 LEI (approximately $1,285) to Mr. Florian's credit card – without Mr. Florian's authorization or consent.

7. During the investigation, Romanian authorities analyzed the four e-mail messages and discovered that the links did not direct Mr. Florian to Skrill's website, but, rather, directed him to four other websites -- www.amisdai.net, www.animals360.net, www.mydigest.net, and www.gilamiavaran.com. Romanian authorities also discovered that the domain names associated with the foregoing websites were no longer valid, for sale, not found, or associated with fraud. Finally, Romanian authorities also discovered that one of the e-mail messages had been sent to Mr. Florian on May 30, 2012, at 05:40:21-0700 from IP address 67.222.153.54 – an IP address assigned to KnownHost LLC, located in West Chester, Pennsylvania.

## REQUEST FOR ORDER

8. The facts set forth in the previous section establish that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, the records and other information will help authorities in Romania identify the individual or individuals who are responsible for the events described above, and/or determine the nature and scope of the individual's or individuals' activities. Accordingly, the United States requests that KnownHost LLC be directed to produce all items described in Part II of Attachment A to this application and the proposed Order.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar Number 498610

By: _/s/ Vincent W. Caputy_
VINCENT W. CAPUTY
Assistant United States Attorney
D.C. Bar Number 362341
Violent Crimes and Narcotics Trafficking Section
555 4th Street, N.W., Room 4233
Washington, D.C. 20530
(202) 252-7743 telephone
(202) 514-6010 facsimile
Vincent.W.Caputy@usdoj.gov

MARY ELLEN WARLOW
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
VA Bar Number 17303

By: /s/ *Mary E. McLaren*
MARY E. MCLAREN
Trial Attorney
Maryland Bar
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530
(202) 514-0040 telephone
(202) 514-0080 facsimile
Mary.McLaren@usdoj.gov

## Relevant Provisions of Romanian Law

1. Article 48, Title III, of Law No. 161/2003

   The input, alteration or deletion, with no right, of computer data or the restriction, with no right, of the access to these data, resulting in unreal data, with a view to using them for legal purposes, is considered a criminal offense and shall be punished with imprisonment from 2 to 7 years.

2. Article 27 of Law No. 365/2002

   The performance of fraudulent payment operations represents:

   (1) The carrying out of one of the operations mentioned in Art. 1 (11) by using an electronic payment instrument, including the identification data that enable its use, without the consent of [the] instrument's owner, shall be punished by imprisonment from 3 to 12 years.
   (2) To perform one of the operations, stipulated by Art. 1 (11), by fraudulently using any identification details or by using false identification details, shall be punished by the same penalty.

3. Article 1 (11) of Law No. 365/2002

   The payment instrument is the tool by means of which the holder can perform the following operations:

   a) fund transfers, other than those issued and performed by a financial institution;
   b) cash withdrawals, as well as the charge and the discharge of one electronic payment instrument.

# ATTACHMENT A

## I. The Account

The Order applies to certain records and information relating to the Internet Protocol ("IP") address 67.222.153.54 and any preservation numbers associated therewith.

## II. Records and Other Information to Be Disclosed

KnownHost LLC is required to disclose to the United States the following records and other information relating to the IP address identified in Part I of this Attachment ("Account") on May 30, 2012, at 05:40:21 – 0700:

A. The following information about the customers or subscribers of the Account:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses and e-mail addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including media access control ("MAC") addresses);
7. Other subscriber numbers or identities (including the registration IP address); and
8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to the Account, including:

1. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination IP addresses; and

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication

(such as source and destination e-mail addresses, IP addresses, and telephone numbers).

2